Filed 10/23/15  Certified for Publication 11/20/15 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SCOTT GRIFFIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE HAUNTED HOTEL, INC.,<br><br>    Defendant and Respondent. | D066715<br><br><br><br>(Super. Ct. No. 37-2013-00044186-<br>CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Ardalan & Associates, P. Christopher Ardalan and Mark K. Drew for Plaintiff and Appellant.

Murchison & Cumming, Jefferson S. Smith, David M. Hall and Scott J. Loeding for Defendant and Respondent.

In October 2011 Appellant Scott Griffin purchased a ticket to experience The Haunted Trail, an outdoor haunted house type of attraction where actors jump out of dark spaces often inches away from patrons, holding prop knives, axes, chainsaws, or severed

body parts. After passing what he believed was the exit and "giggling and laughing" with his friends about how much fun they had, Griffin unexpectedly was confronted by a final scare known as the "Carrie" effect—so named because, like the horror film Carrie, patrons are led to believe the attraction is over, only to be met by one more extreme fright. This was delivered by an actor wielding a gas powered chainsaw (the chain had been removed), who approached Griffin, frightened him, and gave chase when Griffin ran away. Griffin was injured when he fell while fleeing. Griffin sued The Haunted Hotel, Inc. (Haunted Hotel), which operates The Haunted Trail, alleging negligence and assault.

"Under the primary assumption of risk doctrine, there is no duty to eliminate or protect a plaintiff against risks that are inherent in a sport or [recreational] activity." (*Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 115.) The trial court granted Haunted Hotel's motion for summary judgment, determining under the primary assumption of risk doctrine Haunted Hotel did not breach any duty to Griffin.

We affirm. The risk that a patron will be frightened, run, and fall is inherent in the fundamental nature of a haunted house attraction like The Haunted Trail. Moreover, on this record there is no evidence creating a triable issue Haunted Hotel unreasonably increased the risk of injury beyond those inherent risks or acted recklessly.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Haunted Trail*

Haunted Hotel operates four Halloween attractions in San Diego County, including The Haunted Trail located in Balboa Park. The Haunted Trail operates from September through October, ending on Halloween.

The Haunted Trail features actors in ghoulish costumes who frighten, startle and sometimes chase patrons amid loud noises and flashing strobe lights in a one mile loop in Balboa Park. Patrons follow a narrow trail in the natural park setting, passing from one horror set to the next, each telling a different gruesome story. Along the way, actors jump out of dark spaces or spring from around corners, often inches away from patrons, holding bloody prop knives, axes or other weapons, or a severed body part.

If a patron becomes frightened and runs away, one of the actors will often chase after the person. The Haunted Trail played an orientation audiotape for every group of visitors who attended the attraction in 2011, which states:

> "Our creatures will not grab you, however, they may accidentally bump into you. Oh, you will be scared sh–less and try to run away, but in the end our creatures will chase you down like the chickens that you are!"[1]

In 2011 the "Frequently Asked Questions" part of The Haunted Trail's Web site stated, "[Y]ou will not be grabbed or pushed," and warned, "Running is the main cause of minor injuries. Make sure to follow the rules and DON'T run and you should be fine!"

---

[1] Griffin's lawyers admitted the audiotape was played for "every" group of visitors who attended in 2011. However, Griffin testified in his deposition he did not remember hearing it.

3

Signs at the entrance stated, "Due to natural surroundings of the park the ground may be uneven with some obstacles such as tree roots, rocks, etc. Be careful."

The parties do not dispute that the ticket Griffin purchased states, "This attraction contains high impact scares" and "is not suitable for people with heart conditions or people prone to seizures; is not recommended for children under age 10; and pregnant women, infants and children being carried will not be allowed entry." The Haunted Trail instructs its employees to "stay away" if a child is crying, not to chase children at all, and to "stay clear of people who are crying."

In 2011 The Haunted Trail employed uniformed off-duty San Diego police officers, a private security force, and an emergency medical technician service to be on-site all weekend nights. All were present the night Griffin attended.

Photographs on The Haunted Trail Web site featured costumed actors holding chainsaws. Griffin purchased his ticket on the Web site. The chainsaw-wielding actors are the most popular feature of The Haunted Trail. The chainsaw scenes have been mentioned in radio advertising or shown on television.

At the final scene along the trail, three people with prop chainsaws—gas powered chainsaws with the chains removed—menace patrons as they walk to an opening in the temporary chain link fence, covered with a dark screen, that runs along the edge of the trail. That opening appears to be the exit, the end of the attraction.

What follows is something Haunted Hotel calls the "Carrie" effect, a final scare patterned after the closing scene of the horror movie Carrie when the audience is led to believe that the terror is over, only to be given one last jolting scare. When patrons have

4

walked through the opening in the fence, they regroup on the park access road, thinking the attraction is over. But this is a fake exit. The access road is controlled by Haunted Hotel. A chainsaw-wielding actor with a gas powered chainsaw suddenly appears, starts the chainsaw, and charges at the patrons—providing a final scare. Although the chain has been removed from the chainsaw, it "still has the whole sound, the whole smell of a chain saw, and that's what gives the effect of—people think it's a real chain saw." During this last encounter, patrons are most prone to run away, with the actor giving chase.

The access road is visible to surrounding public space. Families "actually come and camp out and watch" because "it's fun to see when someone gets freaked out when a chain saw comes and chases an individual."

In the 14 years The Haunted Trial has been operating, over 250,000 patrons have attended the event. In the three years preceding Griffin's incident, between 10 and 15 people fell while running from the chainsaw-wielding actor in this final scare. Three people fell the night Griffin attended. None of the15 who fell reported being injured.

B. *Griffin's Incident*

Near Halloween in October 2011 Griffin learned some friends were planning to attend The Haunted Trail. Griffin had previously attended Knott's "Scary" Farm and possibly "Fright Night" at Universal Studios. He had been to Balboa Park before, but he had never heard of The Haunted Trail and knew nothing about the attraction.

Griffin and his group entered the attraction, but Griffin recalled little about the preliminaries, acknowledging that he was "not paying attention" to his surroundings, but rather "laughing, visiting" with friends. As he walked through The Haunted Trail, Griffin

5

was, to use his own words, "scared pretty darn good."  He was not chased along the trail and said "it was fun."

At the final scene along the trail, Griffin heard chainsaws.  At first, he was "shocked," but he just "walk[ed] through . . . I knew we were almost ending  . . . we had already had so much fun already through the thingy, so it was okay."

After this final scene, Griffin headed for the "gate," which he believed was an exit, "ending the experience."

> "[T]here was clearly, to me, an exit that the event is over because
> inside everything is roped off, you are on a path.  It's very clear
> where you're going. And the gates and the exit, to me, were clear
> that we were done with the experience."

Griffin and his friends were standing on the access road, "giggling and laughing" and saying "how fun was that?"  This area, a "well-lit even surface," is actually controlled by The Haunted Trail and is part of the show

Griffin testified in deposition that suddenly, a "gentleman" started a chainsaw and "came at me with it."  Griffin tried to "back away from him" but "he just kept following me."  Griffin asked the man to "stop" and when he did not stop, Griffin "started running away because it felt unsafe with his chainsaw because he was pointing it at me . . . ."

Griffin testified, "I started to try to get away from him, and, boy, he seemed to really enjoy that" and "I really got scared because he was really at me, with me at it, he was unlike the other people.  And we had already exited the venue.  He was right into my space."  "He was literally coming at me.  He selected me . . . .  [¶] . . .  He was pointing it [chainsaw] right at me and it was live and active; you could literally smell the gas

6

. . . hear the sound and everything. Yes, I felt like he was handling that very dangerous [*sic*]. . . . [¶] . . . [¶] It was a real chainsaw. . . . [¶] . . . [¶] . . . This gentlemen did not keep a safe distance . . . and the more I backed away, the more he followed me. I asked him to stop; he wouldn't. I started running. He was literally running after me. And I really felt unsafe. And then I started getting really fearful that something was going to happen, because here's some stranger—I don't even know who he is—with a live, active chainsaw running after me with it. [¶] . . . [¶] . . . I was fearful for my safety big time." "I really felt that he could have tripped, that chainsaw could have fell down, and I could dangerously [*sic*] get hurt by it. That's what I felt."

While being chased and running an unspecified distance, Griffin fell, injuring his wrist. In deposition, Griffin acknowledged "it is the point of The Haunted Trail to scare the people who attend" and "not many people would attend the event if it were not scary."

A representative of The Haunted Trail testified in deposition, "you scare the hell out of them as much as you possibly can, and that's what they're paying us for, that's why they come." He stated Griffin "was never in harm. . . . He ran. He chose to run. You can't chase a human that doesn't run. If he had just stood there and said 'stop,' then it's not fun. You move on. You scare somebody else."

C. *The Trial Court Grants Summary Judgment*

In March 2014 Griffin filed a first amended complaint against Haunted Hotel for general negligence, negligent hiring, training, supervision, and retention, and assault. Overruling a defense motion to strike, the trial court allowed the amended complaint to

7

allege punitive damages, in part because "the FAC [first amended complaint] now alleges that defendant trained employees to chase patrons beyond the exit."

In June 2014 the Haunted Hotel filed a motion for summary judgment, asserting "the primary assumption of risk doctrine, as recently applied by the California Supreme Court in *Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148 [(*Nalwa*)], operates as a bar against claims by the patrons of 'scare' attractions or 'haunts' for injuries allegedly sustained as a result of being frightened, startled, chased or otherwise menaced during the activity by actors who are employed to do just that."

Griffin filed opposition, asserting the "fatal flaw" in Haunted Hotel's theory was "Mr. Griffin was not injured while on the Haunted Trail, and the reason why he ran had nothing to do with being scared by an actor's fantasy role play." (Emphasis omitted.) Citing *Luna v Vela* (2008) 169 Cal.App.4th 102, 113, Griffin's lawyers also asserted, "the primary assumption of the risk doctrine does not apply in context where a Defendant is accused of engaging in oppressive, malicious or reckless conduct." (Emphasis omitted.)

At the hearing, the trial court focused on whether the Carrie effect scare occurred inside the attraction:

> "The Court: Well, let me ask you this because it appeared to me that major issue is whether the gate was, in fact, an exit and the end of the show or whether the gate was what appears, at least defendants are arguing, a fake exit and all part of the show. [¶] And if that's the case and the plaintiff was still within the bounds of what was controlled by defendant, that's the experience he paid for. . . . [¶] . . . [¶] . . . That's the question. Where does the experience end?"

After oral argument, the court granted the motion for summary judgment, stating, "the argument that defendant went beyond its boundaries is not supported by the

8

evidence. It appears all the activities took place on and within defendant's boundaries, although plaintiff was unaware of that fact. That awareness, that subjective awareness is not what is required. And given further what the inherent nature of this event was, it does not appear inappropriate or actionable." In its order, the trial court added:

> "Patrons of The Haunted Trail pay for the opportunity to be scared and The Haunted Trail, by design, is scary. Plaintiff argues the assumption of risk doctrine does not apply because he was chased after he believed the event was over and 'even football fields have sidelines.' [Citation.] However, the doctrine 'does not depend on the particular plaintiff's subjective knowledge or appreciation of the potential risk.' *Knight*[ *v. Jewett* (1992)] 3 Cal.4th [296,] 316 [(*Knight*)]. [¶] . . . [W]hile the plaintiff believed he had gone through an exit he was still within the scary experience he purchased. The risk that plaintiff might be scared enough to run away is inherent in the fundamental nature of a haunted house attraction. [¶] . . . [W]ho would want to go to a haunted house that is not scary?"

The court entered judgment in favor of The Haunted Hotel. Griffin timely appealed.

## DISCUSSION

### I. *Standard of Review*

"We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Luna v. Vela*, *supra*, 169 Cal.App.4th at p. 107.) "Determining whether the primary assumption of risk doctrine applies is a legal question to be decided by the court." (*Beninati v. Black Rock City, LLC* (2009) 175 Cal.App.4th 650, 656 (*Beninati*).)

9

## II. *The Primary Assumption of Risk Doctrine*

Under the primary assumption of risk doctrine, an operator of a business that provides a recreational activity posing inherent risks of injury has no duty to eliminate those inherent risks. (*Nalwa, supra,* 55 Cal.4th at p. 1162.) *Knight, supra,* 3 Cal.4th 296 illustrates the concept in the context of a ski resort, explaining that because moguls on a ski run are an inherent risk of the sport, a resort operator would have no liability to a plaintiff who fell while skiing over a mogul. (*Id.* at pp. 315–316.)

In *Nalwa*, *supra,* the Supreme Court held primary assumption of risk is not limited to sports, but also applies to other recreational activities "'involving an inherent risk of injury to voluntary participants . . . where the risk cannot be eliminated without altering the fundamental nature of the activity.'" (*Id.* at p. 1156.) In *Nalwa*, the Court applied primary assumption of risk where the plaintiff was injured on an amusement park bumper car ride.

Primary assumption of risk has been applied in other recreational contexts. For example, in *Beninati, supra,* 175 Cal.App.4th 650, the court applied the doctrine where the plaintiff, who attended the Burning Man Festival, was himself burned when he tripped and fell into the remnants of the burning man effigy. The court also applied primary assumption of risk in *Amezcua v. Los Angeles Harley-Davidson, Inc.* (2011) 200 Cal.App.4th 217, which involved a noncompetitive group motorcycle ride.

Which risks are inherent in a given recreational activity is suitable for resolution on summary judgment. (*Nalwa, supra,* 55 Cal.4th at p. 1158.) Such a determination is a legal question within the province of the courts and is reached from common knowledge.

10

(*Luna v. Vela*, *supra*, 169 Cal.App.4th at p. 110.) The court may also consider its "own or common experience with the recreational activity . . . and documentary evidence introduced by the parties on a motion for summary judgment." (*Nalwa*, *supra*, 55 Cal.4th at p. 1158.)

Under the primary assumption of risk doctrine, "a court need not ask what risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the [recreational activity] and the defendant's role in or relationship to that [activity] to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm." (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 161 (*Avila*).)

Primary assumption of risk does not provide absolute immunity. A participant and an owner/operator still owe certain duties of care. Such duties vary according to the *role* played by particular defendant involved in the activity. (*Luna v. Vela*, *supra*, 169 Cal.App.4th at p. 109.) For example, a batter, i.e., a *participant* in a baseball game, has no duty to avoid carelessly throwing a bat after hitting a ball—such conduct being an inherent risk of the sport. However, the ballpark *owner*, because of his or her different relationship to the sport, may have a duty to take reasonable measures to protect spectators from carelessly thrown bats. (*Ibid.*)

Owners and operators "owe participants the duty not to unreasonably increase the risk of injury" beyond those inherent in the activity. (*Nalwa*, *supra*, 55 Cal.4th at p. 1162; *Fazio v. Fairbanks Ranch Country Club* (2015) 233 Cal.App.4th 1053, 1059 (*Fazio*).)

11

Coparticipants in a recreational activity may be liable if their conduct is "so reckless as to be totally outside the range of the ordinary activity" involved. (*Knight*, *supra*, 3 Cal.4th at p. 320.) Conduct is """totally outside the range of ordinary activity involved""" if prohibiting that conduct would """neither deter vigorous participation""" in the activity nor """otherwise fundamentally alter""" its nature. (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 470.)

In moving for summary judgment, Haunted Hotel had the burden to establish: (1) primary assumption of risk applied to this recreational activity; and (2) the undisputed evidence established as a matter of law Haunted Hotel did not (i) unreasonably increase the risk of harm beyond those risks inherent in the Haunted Trail; and (ii) intentionally or recklessly injure Griffin. (*Fazio*, *supra*, 233 Cal.App.4th at pp. 1060, 1063.)

### III. *The Trial Court Properly Entered Summary Judgment*

#### A. *Primary Assumption of Risk Applies to the Haunted Trail*

The trial court correctly applied primary assumption of risk to the recreational activity of the Haunted Trail. The doctrine applies to recreational activities "'involving an inherent risk of injury to voluntary participants . . . where the risk cannot be eliminated without altering the fundamental nature of the activity.'" (*Nalwa*, *supra*, 55 Cal.4th at p. 1156.) In *Nalwa*, the Supreme Court applied primary assumption of risk to a bumper car amusement ride because the whole point of a bumper car is to bump and "[y]ou pretty much can't have a bumper car unless you have bumps." (*Id.* at p. 1157.) Bumper car collisions carry an inherent risk of minor injuries, and the risk cannot be

12

eliminated without changing the basic character of the activity. "'Indeed, who would want to ride a *tapper car* at an amusement park?'" (*Id*. at p. 1158.)

Similarly here, the point of The Haunted Trail is to scare people, and the risk that someone will become scared and react by running away cannot be eliminated without changing the basic character of the activity. As the trial court aptly noted, "[W]ho would want to go to a haunted house that is not scary?" (See also Moar, *Case Law from the Crypt, The Law of Halloween* 83-Oct N.Y. St. B.J. 10, (Oct. 2011) [discussing haunted house personal injury cases and concluding, "Patrons in a Halloween haunted house are expected to be surprised, startled and scared by the exhibits but the operator does not have a duty to guard against patrons reacting in bizarre, frightened and unpredictable ways."].)

B. *Griffin's Arguments Against Applying Primary Assumption of Risk Are Without Merit*

On appeal, Griffin concedes primary assumption of risk applies to a haunted house activity, at least to the extent injuries occur within the boundaries of the attraction. Nevertheless, for a variety of reasons, Griffin contends the court erred in applying the doctrine in this case. As explained below, none of Griffin's contentions has merit.

1. *Duty is a question of law*

Citing *Luna v. Vela*, *supra*, 169 Cal.App.4th at pages 112-114, Griffin contends "[w]hether a particular risk is within the inherent risk of a particular activity is a triable issue of fact for the jury to decide and is inappropriate for resolution at the summary judgment stage."

13

However, Griffin incorrectly states the law. "The determinant of duty, 'inherent risk,' is to be decided solely as a question of law and based on the general characteristics of the sport activity and the parties' relationship to it." (*Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1635; *Nalwa, supra,* 55 Cal.4th at p. 1158.) "Judges may rely on their own or common experience with recreational activity in deciding 'inherent risk questions.'" (*Cann v. Stefanec* (2013) 217 Cal.App.4th 462, 469.) "Since the existence of the primary assumption of the risk is dependent upon the existence of a legal duty, and since duty is an issue of law to be decided by the court, the applicability of that defense is amenable to resolution by summary judgment." (*Freeman v. Hale* (1994) 30 Cal.App.4th 1388, 1395.)

The case upon which Griffin relies, *Luna v. Vela*, does not support, but rather refutes, Griffin's argument. In *Luna v. Vela* the court held, "'The determinant of duty, "inherent risk," is to be decided solely as a question of law and . . . is necessarily reached from the common knowledge of judges . . . .'" (*Luna v. Vela, supra,* 169 Cal.App.4th at p. 110.)[2]

2. *Griffin's subjective fear*

Griffin also asserts that even if being frightened is an inherent risk of the Haunted Trail, there is a triable issue about the "type" of "fear" Griffin experienced. More specifically, Griffin contends his injuries were not caused by his reaction to "fun" fear—

_____

[2]     On the entirely *separate issue* of whether the defendant unreasonably increased the risk of harm beyond the inherent risk of the activity, *Luna v. Vela* held that on the record there, a triable issue of fact existed precluding summary judgment. (*Luna v. Vela, supra,* 169 Cal.App.4th at p. 112.)

14

which he defines as "the purpose for why he and others go to such scare events." Rather, Griffin asserts, he was fearful of the "real, actual danger of physical injury that an irresponsible employee was creating" by mishandling the chainsaw. According to Griffin's lawyers, "Mr. Griffin made it clear [in his deposition testimony] that his fear was not a mere reaction to a startling, scary appearance as a scary maniac, but instead, the real and actual fear that one of Respondent's employees was acting in a dangerous and reckless manner and, as a result, was creating an actual physical danger."

We reject Griffin's argument for two reasons. First, Griffin's deposition testimony does not support his lawyer's theory that Griffin ran away because he knew the person chasing him was a Haunted Trail actor and was fearful of the way the employee was handling the chainsaw. As quoted below, Griffin testified he thought the Haunted Trail attraction had already ended, and he believed the chainsaw-wielding assailant was *not* part of the show:

> "[H]e started his chainsaw, and his chainsaw was going, and I really got scared because he was really at me, with me at it, *he was unlike the other people. And we had already exited the venue.* He was right into my space." (Italics added.)

> [U]nlike the ones inside, they are behind the guided ropes, and it felt completely self [sic] and staged, and it felt safe and I never got scared."

> But that was not what this gentleman did with his chainsaw. This gentleman did not keep a safe distance. He did come at me with it, and the more I backed away, the more he followed me. I asked him to stop; he wouldn't. I started running. He was literally running after me. And I really felt unsafe."

> And then I started getting really fearful that something was going to happen, *because here's some stranger—I don't even know who he*

15

*is*—with a live, active chainsaw running after me with it." (Italics added.)

Contrary to his assertions on appeal, Griffin's deposition testimony dovetails perfectly into applying primary assumption of risk. The risk inherent in the Haunted Trail's Carrie effect ending—that a patron would be lulled into a false sense of safety by a fake exit, and then be confronted with an extreme scare event that would cause the person to flee (and fall while fleeing)—is exactly the risk Griffin experienced.

Second, even assuming Griffin's lawyer's theory is correct, i.e., Griffin knew the whole scene was fake, but was afraid because the actor was mishandling what appeared to be a live chainsaw—Griffin's subjective state of mind is simply irrelevant in this context. Because primary assumption of risk focuses on the question of duty, it is *not* dependent on either the plaintiff's implied consent to, or subjective appreciation of, the potential risk. (*Knight*, *supra*, 3 Cal.4th at p. 316.) Thus, even if Griffin was injured from his reaction to "scary fear" rather than "fun" fear, his subjective mental state is irrelevant. (*Cann v. Stefanec* (2013) 217 Cal.App.4th 462, 471.) "[A] court need not ask what risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the [activity] and the defendant's role in or relationship to that [activity] in order to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm." (*Avila*, *supra*, 38 Cal.4th 148 at p. 161.)

16

### 3. *The location of the Carrie effect scare*

Griffin also contends that primary assumption of risk does not apply because "the location of the final scare took place *outside* the boundary of the Haunted Trail." (Emphasis omitted.) He contends there should be a "simple bright line rule" that a haunted house confines its "scary conduct" to the "boundaries of the event."

Griffin's argument fails because the boundaries of the attraction are defined by Haunted Hotel, not its patrons. It is undisputed the attraction included the access road where Griffin was chased, ran, and apparently fell. Undisputed fact #25 states, "When parties have 'exited' through opening in the fence, they regroup on the park access road, *also controlled by Defendant during the weeks of the event*, thinking the attraction is over. Then, one of the chainsaw-wielding actors suddenly appears and charges at the patrons one last time—providing a final scare." (Italics added.) Undisputed facts #50 and #51 state Griffin was standing on this access road when the chainsaw-wielding actor appeared and started chasing him. The record does not contain evidence of the exact location where Griffin fell; however, there is no evidence Griffin was chased beyond the access road, which was controlled by Haunted Hotel and part of The Haunted Trail activity. Indeed, after inviting Griffin's lawyer to identify evidence that the incident occurred off-site, and hearing him cite none, the trial court concluded, "the argument that defendant went beyond its boundaries is not supported by the evidence."

Griffin also argues that "at minimum," whether his proposed "bright line rule" would inherently alter the basic nature of scare events like The Haunted Trail is a jury question that should not be resolved on summary judgment. However, as already noted,

determining what risks are "inherent" is a question of law. (*Nalwa*, *supra*, 55 Cal.4th at p. 1158.)

4. *Revoked consent*

Finally, Griffin argues there is a triable issue he revoked his consent to assuming the risk of being frightened because he repeatedly told the actor chasing him to "stop." However, Griffin's argument fails because "[p]rimary assumption of risk focuses on the legal question of duty." (*Lilley v. Elk Grove Unified School Dist.* (1998) 68 Cal.App.4th 939, 943.) Primary assumption of risk "does not depend upon a plaintiff's implied consent to injury, nor is the plaintiff's subjective awareness or expectation relevant." (*Ibid.*) For example, in *Cann v. Stefanec*, *supra*, the plaintiff was injured by a weight dropped by a fellow swim team member during a workout session. The plaintiff argued primary assumption of risk did not apply because "she did not impliedly consent to having a weight dropped on her head." (*Cann, supra,* 217 Cal.App.4th at p. 471.) The appellate court rejected that argument, stating primary assumption of risk "'does not depend upon a plaintiff's implied consent to injury . . . .'" (*Ibid.*)[3]

---

[3]    For the first time in his reply brief, Griffin argues that fear of physical harm "is not something that is an inherent part of the *cultural experience of Halloween*." (Italics added, original emphasis omitted.) Arguments made for the first time in a reply brief are not considered. Moreover, this case does not involve the cultural experience of Halloween, i.e., pumpkin carving, trick or treating with young children, or even bobbing for apples. It involves an adult who pays money to experience extreme fright, and receives exactly what he paid for.

C. *There Is No Evidence Creating a Triable Issue That Haunted Hotel Unreasonably Increased the Risks Beyond Those Inherent in the Activity*

The doctrine of primary assumption of risk "'does not grant unbridled legal immunity to all defendants.'" (*Fazio v. Fairbanks Ranch Country Club*, *supra*, 233 Cal.App.4th at p. 1059.) An owner or operator still has a duty to use due care not to increase the risks to a participant over and above those inherent in the activity. (*Ibid*.) Accordingly, a defendant who moves for summary judgment must establish its conduct did not increase the risk of harm to participants. (*Id*. at p. 1060.)

The Supreme Court has stated that "on a sufficient record," summary judgment is appropriate in primary assumption of risk cases. (*Shin v. Ahn* (2007) 42 Cal.4th 482, 500.) For example, in *Beninati*, *supra*, 175 Cal.App.4th at pages 660-661, involving an attendee at the burning man event who fell into the fire, the court affirmed summary judgment because there was no evidence defendant "did anything that increased the inherent risk of harm to [plaintiff] normally associated with entering an area surrounded by fire." In contrast, this Court reversed summary judgment in a primary assumption of risk case involving a fall injury where there was conflicting evidence on the adequacy of lighting where plaintiff fell. (*Fazio*, *supra,* 233 Cal.App.4th at p. 1063.)

Griffin contends summary judgment was improperly granted, asserting there is a triable issue Haunted Hotel unreasonably increased the inherent risk of harm. Griffin notes The Haunted Trail's website warns patrons not to run: "Running is the main cause of minor injuries. Make sure to follow the rules and DON'T run and you should be fine." Yet, Griffin argues, the Haunted Trail failed to follow its own safety rule by encouraging

19

its patrons to run by stating: "Oh, you will be scared sh–less and try to run away, but in the end our creatures will chase you down like the chickens that you are." Moreover, Griffin claims Haunted Hotel "chose to encourage running *in the dark in the woods . . . .*"! (Italics added.)(AOB 27)! In his reply brief, Griffin states Haunted Hotel failed to respond to this argument in its own brief, and therefore, "Respondent's failure to contest this area, independently, warrants reversal."

Addressing Griffin's last point first—Haunted Hotel's brief does address this issue, albeit obliquely, and only in a footnote at the bottom of page 50. There, Haunted Hotel states, "The *Nalwa* Court also expressly rejected Appellant's argument that the Haunted Trail's website rules discouraging running impose a legal tort duty upon Respondent."

While placing a respondent's argument in a footnote may be a tactical mistake because it could be easily overlooked, even a respondent's *complete failure* to address an appellant's argument does not require us to treat the failure to respond as a concession the argument has merit. (*Kruger v. Department of Motor Vehicles* (1993) 13 Cal.App.4th 541, 546.) In fact, if a respondent in a civil case files no brief at all, we still examine the record to see if it supports any claims of error made by the appellant. (*Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 734, fn. 1.)

Griffin cites no authority for his contention "reversal is compelled" when a respondent fails to address an appellant's argument. We could reject his argument on that ground alone. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3.) Moreover, if such a rule were adopted, it would require a respondent to respond to his or her opponent's every argument, no matter how meritless. This would often

20

needlessly lengthen briefs and resulting needless expense to clients.  Failing to respond to an opponent's argument does not warrant the inflexible forfeiture rule Griffin proposes. (*People v. Hill* (1992) 3 Cal.4th 959, 995, fn. 3 overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

Turning to the merits, Griffin's arguments are unsupported by the record.  For example, Griffin contends the Haunted Trail "chose to encourage running in the dark woods."  However, it is undisputed the area where Griffin was chased was not in the woods but rather was on *even pavement* and was "*well-lit*."  (Italics added.)

It is true that Haunted Hotel recognized there was a risk of harm from running, and yet knew patrons were prone to run while being chased in the Carrie effect scene.  But Griffin errs in concluding these facts create a triable issue Haunted Hotel unreasonably increased the risk of harm *beyond* those inherent in a haunted house experience.  As explained, an inherent risk of a fright-event such as The Haunted Trail is patrons will become frightened and run.  Therefore, under the primary assumption of risk doctrine, Haunted Hotel had no duty to protect Griffin from or eliminate that risk.

The scope of Haunted Hotel's duty is to not unreasonably *increase* the inherent risk a patron would be surprised, started, or scared by the Carrie effect scene, causing the patron to run and fall.  Griffin cites no evidence raising even a reasonable inference that any action or inaction by Haunted Hotel increased the risk of harm to Griffin *beyond those inherent* in an intensely scary amusement attraction, or that such risk could have been mitigated without altering the nature of the attraction Griffin was voluntarily participating in.

For this reason, the instant case is far different from *Luna v. Vela*, *supra*, 169 Cal.App.4th at page 112, where there was evidence the defendant increased the risk of tripping over a front-yard volleyball net, and *Fazio v. Fairbanks Ranch Country Club*, *supra*, 233 Cal.App.4th at p. 1063, where there was conflicting evidence on the adequacy of lighting on the stage where plaintiff fell.

The warnings Haunted Hotel gave to not run, and its conduct in encourage patrons to run do not change the analysis. In *Nalwa,* the Supreme Court considered a similar argument and upheld summary judgment. There, Plaintiff's injury occurred when her bumper car was bumped head-on. (*Nalwa*, *supra,* 55 Cal.4th at p. 1152.) The defendant amusement ride owner in *Nalwa* had established rules designed to discourage head-on bumping, but knew head-on bumping still occurred. Affirming summary judgment, the *Nalwa* Court rejected the argument the defendant's rules created a triable issue it had unreasonably increased the risk of harm. The Court stated, "[W]hile plaintiff points to defendant's efforts to discourage head-on bumping, such voluntary efforts at minimizing risk do not demonstrate defendant bore a legal duty to do so; not every rule imposed by an organizer or agreed to by participants in a recreational activity reflects a legal duty enforceable in tort." (*Id.* at p. 1163.) Similarly here, Haunted Hotel's efforts to minimize risks does not create a triable issue Haunted Hotel unreasonably increased the risk of falling beyond that inherent in the frightening event.

22

D. *There Is No Evidence Creating a Triable Issue That Haunted Hotel Acted Recklessly*

In applying primary assumption of risk, a coparticipant in a sport breaches a duty of care "only if the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of ordinary activity involved in the sport." (*Knight*, *supra*, 3 Cal.4th at p. 320, fn. omitted.) In a primary assumption of risk case, summary judgment is appropriate where there is no evidence the defendant intentionally or recklessly injured the plaintiff. (*Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1066.)

Griffin contends the court erred in granting summary judgment because there is a triable issue Haunted Hotel "recklessly and intentionally caused customers, including Mr. Griffin, to run despite being aware of a serious trip and fall hazard." Griffin contends Haunted Hotel acted recklessly because prior to Griffin's incident, 15 people had run and fallen at The Haunted Trail, and "at least" 10 of these were on the access road when patrons were chased by the actor carrying the chainsaw.

Reckless conduct involves a "'conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it.'" (*Mammoth Mountain Ski Area v. Graham* (2006) 135 Cal.App.4th 1367, 1373.) Reckless conduct is the ""'deliberate disregard" of the "high degree of probability" that an injury will occur.'" (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 470.)

Here, viewing the evidence in the light most favorable to Griffin, in the 14 years The Haunted Trail has been operating before this incident, at least 250,000 patrons

23

attended, and only 10 of those fell on the access road during the Carrie effect. And, none of those 10 were injured, except for Griffin. The trial court correctly determined this is *not* a "high probability that an injury will occur."

Griffin also contends Haunted Hotel was reckless because there were "areas in the park, the grounds could be different levels, there could be cracks, things on the ground the people can trip on" and "[s]ome areas could be dark." However, this testimony about what "could be" is too speculative to create a triable issue of any increased risk of harm. (See *Kachadoorian v. Calwa County Water Dist.* (1979) 96 Cal.App.3d 741, 749-750 [testimony about what "could be" is speculative].) Speculative possibilities are not substantial evidence. (See *Citizen Action To Serve All Students v. Thornley* (1990) 222 Cal.App.3d 748, 756.)

Moreover, the witness who testified what "could be" was not asked what "areas in the park" he was referring to—and perhaps more to the point, Griffin conceded as an "undisputed fact" the Carrie effect occurred "on a well-lit even surface."

Griffin also contends the court erred in determining there is no triable issue of recklessness because (1) the court allowed Griffin to allege punitive damages, and (2) the factual allegations upon which the court allowed the punitive damage claim "have full factual basis . . . ."

Griffin incorrectly states his allegations were supported by the evidence. His punitive damage claim primarily rested on allegations Haunted Hotel trained its employees to chase patrons beyond the physical boundary of the event. On summary judgment, this allegation was refuted. In short, a trial court's ruling that punitive damages

24

was adequately *pleaded* does not require a finding on summary judgment, an evidentiary motion, that a triable issue of punitive damages exists.

The cases involving reckless conduct Griffin cites, where summary judgment has been denied, are materially distinguishable from Griffin's case. For example, in *Mammoth Mountain Ski Area v. Graham*, *supra,* 135 Cal.App.4th 1367, a ski instructor was injured when struck by a teenaged snowboarder, while the snowboarder's attention was directed toward his brother, with whom he was engaged in a downhill high speed snowball fight. The court held there was a triable issue the defendant snowboarder was reckless because "[w]hile many cold-weather activities involve the throwing of snowballs, participation in snowboarding or skiing does not carry with it the inherent risk of being struck by another snowboarder or skier engaged in a snowball fight." (*Id*. at pp. 1373-1374.)

Similarly, in *Lackner v. North* (2006) 135 Cal.App.4th 1188, defendant snowboarded at high speed into a flat area at the base of an advanced run where people stop to rest, was not looking where he was going, and collided with a skier at a complete stop. The force of impact was so strong, the plaintiff's husband, standing nearby, heard the bones being crushed. The defendant's conduct in *Lackner* was analogous to a freeway driver exiting the freeway without slowing down or looking for other cars, and as a result, crashes into one that has stopped and is waiting to turn onto a connecting street. On those facts, the court held there was a triable issue the defendant was reckless. (*Id.* at pp. 1194-1195.)

25

In stark contrast here, the very purpose of the Haunted Trail is to frighten patrons. Haunted Hotel informed patrons the event had "high impact scares." Patrons in a Halloween haunted house are expected to be surprised, startled, and scared by the exhibits. That is what Griffin paid money to experience. At bottom, his complaint here is Haunted Hotel delivered on its promise to scare the wits out of him.

*Galan v. Covenant House New Orleans* (La.Ct.App. 1997) 695 So.2d 1007, 1008 fully supports the result here. In *Galan*, after a haunted house patron walked through a fake "exit," a chainsaw carrying actor jumped out to frighten the patrons "one last time." Plaintiff sued alleging defendants breached their duty "by placing their last exhibit outside of the exit . . . at a point where patrons would no longer expect to be frightened." The *Galan* court rejected the argument, concluding:

> "Patrons in a Halloween haunted house are expected to be surprised, startled and scared by the exhibits but the operator does not have a duty to guard against patrons reacting in bizarre, frightened and unpredictable ways." (*Id.* at p. 1009.)

A basic part of the scares at The Haunted Trial is the startling, frightening, menacing and chasing of patrons by actors in ghoulish costumes, some carrying chainsaws with the chain removed. There is an inherent risk that a patron may decide to run and fall. Because there is no evidence that anyone associated with The Haunted Trail intentionally injured Griffin, and because being chased in the Carrie effect scene is neither reckless nor outside the range of ordinary activity involved in a scare attraction, the trial court properly determined that as a matter of law, Haunted Hotel breached no duty to Griffin.

26

Being chased within the physical confines of The Haunted Trail by a chainsaw carrying maniac is a fundamental part and inherent risk of this amusement. Griffin voluntarily paid money to experience it. "It is not the function of tort law to police such conduct." (*Avila*, *supra*, 38 Cal.4th at p. 165.)

## DISPOSITION

The judgment is affirmed. Haunted Hotel to recover costs on appeal.


                                                                    NARES, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.


27

Filed 11/20/15

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

SCOTT GRIFFIN,
Plaintiff and Appellant,
v.
THE HAUNTED HOTEL,
Defendant and Respondent.
**D066715**
**San Diego County No. 37-2013-00044186-CU-PO-CTL**

THE COURT:

On November 2, 2015, this Court issued an order denying respondent's October 23, 2015 request for publication.

Thereafter, the Court received three additional requests for publication, one from a law firm representing the California Attractions and Parks Association that represent clients in cases arising out of the operation of amusement and entertainment venues. Based on the persuasive reasoning set forth in these additional publication requests, the court now concludes that the opinion meets the criteria for publication in California Rule of Court, rule 8.1105(c).

Therefore, the opinion is ordered published.

BENKE, Acting P. J.

1