Filed 07/17/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DIANE WOLF,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ALEXANDER WEBER,<br><br>        Defendant and Respondent. | A157937<br><br>(Contra Costa County<br>Super. Ct. No. MSC1701683) |

Plaintiff Diane Wolf suffered injuries after defendant Alexander Weber's dog allegedly collided with her on a hiking trail where dogs are allowed off leash under the control of their owners.  The question before us is whether her personal injury action is barred by the doctrine of primary assumption of risk.  The trial court granted defendant summary judgment on this basis.  We conclude primary assumption of risk does not apply to the circumstances before us, and accordingly reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Many of the facts in this case are undisputed.  On October 6, 2016, Wolf and her husband were walking with their dog, Maury, on Wildcat Gorge Trail in Tilden Regional Park, part of the East Bay Regional Park District (the Park District).  Dogs are allowed off leash in this area of the park, but only if they are under their owners' control.  (East Bay Regional Park District Ordinance 38, section 801.3 (section 801.3).)  Weber was walking on the same trail with his dog Luigi, a "larger" Argentinian Mastiff-Boxer mix, and a

1

colleague, Martin Cenek. Both Luigi and Maury were off leash. Wolf knew dogs were allowed off leash on this trail and expected other dogs would play with each other, but maintains Maury did not play with other dogs.

The two parties were toward the end of the trail. Weber and his party were walking more than 70 feet ahead of Wolf's party. At some point, Luigi began to lag behind Weber and Cenek. Then, unbeknownst to Weber and Cenek, Luigi wandered towards Wolf's party. Weber and Cenek realized Luigi was absent when they heard Wolf yell that she was afraid. They turned around and saw Luigi approaching Wolf's party. Attempting to get Luigi to return, Weber told Luigi to sit, but Luigi did not comply. Weber called for Luigi several times, and Luigi began to return to Weber after the second or third command. Around the same time, Wolf turned away from Luigi out of fear. She felt something strike her in the back of her right knee and fell to the ground, dislocating her ankle and breaking two bones in her leg. Neither Wolf nor her husband witnessed what caused her fall.

There is some uncertainty about the exact circumstances of Wolf's fall. According to Weber, the dogs were "starting to play" with each other and running in "circles." As Luigi was returning to Weber, Maury "intercepted" Luigi, causing Luigi to trip, roll over, and hit the ground. At the same time, Wolf fell to the ground. Weber did not see what caused Wolf to fall, but assumed the fall was caused by Luigi colliding with her. Cenek's version of events was similar; according to him, the dogs "tumbled over each other" and collided with Wolf. He could not tell which dog made contact with Wolf because they both rolled together into her. Plaintiff does not directly dispute either account, except to maintain that Maury did not play with other dogs.

Weber was interviewed by a Park District police officer who came to the scene. He admitted that Luigi was not under perfect control, that Luigi

2

should have been under his control, and that Luigi was still being trained. The officer did not issue Weber a citation.

Wolf sued Weber for personal injury, alleging causes of action for negligence and negligence per se. Wolf alleged Weber breached his duty of care "by failing to leash or otherwise control Luigi in order to ensure the dog's safe and proper behavior on the trail." The negligence per se action contended Weber violated section 801.3 by failing to keep his dog under control.

Weber moved for summary judgment based on the affirmative defense of primary assumption of risk. The trial court granted the motion, concluding that the primary assumption of risk doctrine applied to off-leash hiking trails and that Wolf assumed the inherent risk of "being bumped by a dog running back to its owner or tumbling over another dog" by hiking on the trail. The court also rejected Wolf's negligence per se claim, reasoning section 801.3 did not abrogate the primary assumption of risk doctrine. It accordingly entered judgment for Weber.

## DISCUSSION

### I.    Standard of Review

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) In moving for summary judgment, a defendant must present evidence that either "conclusively negate[s] an element of the plaintiff's cause of action" or "show[s] that the plaintiff does not possess, and cannot reasonably obtain," evidence needed to establish an element of the claim. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853–854.) If the defendant meets this burden, "the burden shifts to the plaintiff . . . to show

that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).)

We review an order granting summary judgment de novo, considering the record before the trial court independently. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.) "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 (*Yanowitz*).) "We affirm the trial court's decision if it is correct on any ground the parties had an adequate opportunity to address in the trial court, regardless of the reasons the trial court gave." (*Jameson v. Pacific Gas & Electric Co.* (2017) 16 Cal.App.5th 901, 909.)

## II. Primary Assumption of Risk Doctrine

In order to establish a cause of action for negligence, a plaintiff must show that the defendant owed her a legal duty of care. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.) Duty is a question of law to be decided by the court and is often " 'amenable to resolution by summary judgment.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1004 (*Kahn*).) In most circumstances, a person owes a duty of care not to cause an unreasonable risk of harm to others. (Civ. Code, § 1714, subd. (a).) However, the primary assumption of risk doctrine creates an exception to this rule. (*Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1068.)

Under the primary assumption of risk doctrine, a person does not owe a duty to protect others from risks inherent in certain recreational activities. (*Knight v. Jewett* (1992) 3 Cal.4th 296, 315–317.) Because some activities are inherently dangerous, "[i]mposing a duty to mitigate those inherent dangers could alter the nature of the activity or inhibit vigorous participation." (*Kahn*, *supra*, 31 Cal.4th at p. 1003.) "The primary assumption of risk

4

doctrine . . . developed to avoid such a chilling effect." (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1154 (*Nalwa*).)

Primary assumption of risk has often been applied in the context of active sports, but the doctrine also applies to other recreational activities that " 'involv[e] an inherent risk of injury to voluntary participants . . . where the risk cannot be eliminated without altering the fundamental nature of the activity.' " (*Nalwa, supra*, 55 Cal.4th at pp. 1155–1156.) "Where the doctrine applies to a recreational activity, operators, instructors and participants in the activity owe other participants only the duty not to act so as to *increase* the risk of injury over that inherent in the activity." (*Id.* at p. 1154, italics omitted.) Coparticipants must not intentionally or recklessly injure other participants (*Griffin v. The Haunted Hotel, Inc.* (2015) 242 Cal.App.4th 490, 499–500 (*Griffin*)), but the doctrine is a complete defense to a claim of negligence (*Foltz v. Johnson* (2017) 16 Cal.App.5th 647, 655). However, recovery for injuries caused by risks *not* inherent in the activity is not barred by the doctrine. (*Swigart v. Bruno* (2017) 13 Cal.App.5th 529, 538 (*Swigart*).)

Courts are empowered to decide which risks are inherent in an activity. (*Griffin, supra*, 242 Cal.App.4th at p. 504.) Our Supreme Court has explained that "[j]udges deciding inherent risk questions . . . may consider not only their own or common experience with the recreational activity involved but may also consult case law, other published materials, and documentary evidence introduced by the parties on a motion for summary judgment." (*Nalwa, supra*, 55 Cal.4th at p. 1158; see also *Swigart, supra*, 13 Cal.App.5th at p. 539 ["[i]n determining whether a risk is inherent in an activity, we consider 'the record and common sense' "].) Using this approach, courts have held that primary assumption of risk bars claims involving a range of recreational activities: riding in a bumper car at an amusement

5

park (*Nalwa*, *supra*, 55 Cal.4th at pp. 1157–1158), falling into the remains of a burning effigy at the Burning Man festival (*Beninati v. Black Rock City, LLC* (2009) 175 Cal.App.4th 650, 653), and falling while being chased at a haunted house attraction (*Griffin*, *supra*, 242 Cal.App.4th at p. 493).

## III.   Application of Primary Assumption of Risk

In deciding what risks inhere in walking a dog in a leash-optional area of the Park District, we think Section 801.3, which sets forth the rules for "Leash Optional Areas," is an appropriate starting point.  As pertinent here, Section 801.3 provides:  "A dog may run at large under the control of its owner or handler within undeveloped areas of the District, provided, however, that the owner or handler shall have a leash for each dog in his/her possession and keep the dog *under control at all times*. [¶] . . . [¶] b) . . . [A] dog is considered under control *when the owner or handler is aware of its conduct and when it returns to the owner or handler when called*.  The owner or handler may not be aware of the animal's conduct when it is out of sight. [¶] c) Dogs are presumed to not be under control when:  [¶] 1) They threaten, harass, chase or harm other animals or wildlife.  This does not include play chase with other dogs.  [¶] 2) They display threatening behavior.  [¶] 3) *They physically harm people directly or indirectly by their actions*.  [¶] . . . [¶] 5) *They touch or jump on other park users who have not invited or engaged in interaction with the dog*.  [¶] 6) They are not within sight of the owner or handler."  (Italics added.)

Weber argues the primary assumption of risk doctrine bars plaintiff's claim because walking a dog on an off-leash trail is a recreational activity that carries with it the inherent risk of contact with another dog running at large.  He points out that dogs in this area of Tilden Park are expressly

6

allowed to "run at large" and "play chase with other dogs." (§§ 801.3 & 801.3(c)(4).)

The problem with this argument is that the very ordinance that authorizes dogs to be off leash in certain areas of Tilden Park *also* requires them to be under the owner's control "at all times." (§ 801.3.) The ordinance defines a dog as under control "when the owner . . . is aware of its conduct and when it returns to the owner . . . when called" (§ 801.3(b)), and it presumes a dog is not under control if the animal "physically harm[s] people directly or indirectly" or "touch[es] or jump[s] on other park users who have not invited or engaged in interaction with the dog." (§§ 801.3(c)(3) & (c)(5).) As a result of the duties and expectations this ordinance establishes, we cannot conclude that being knocked over by an unleashed dog with which a person has sought no interaction is an inherent risk of walking in this portion of Tilden Park. We hold that Wolf's claim does not fall within the ambit of primary assumption of risk.

This case is fundamentally unlike the cases on which Weber relies. The plaintiff in *Levinson v. Owens* (2009) 176 Cal.App.4th 1534 asked to ride a host's horse, telling him she had ridden previously, and she was injured when she fell from the horse. (*Id.* at pp. 1539-1540.) In concluding the defendants were entitled to summary judgment, the appellate court noted that horseback riding is an "inherently dangerous sport" (*id.* at p. 1546), and that the plaintiff had "only herself to blame" when she " 'bit off more than she could chew' " (*id.* at p. 1538). The same cannot be said here, where dogs may be off leash only if they are under their owners' control, and Wolf did not ask to interact with Weber's dog.

Defendant also points to *Priebe v. Nelson* (2006) 39 Cal.4th 1112 as an example of the primary assumption of risk doctrine applied to dogs, but the

case is readily distinguishable. Our high court there was concerned with the "veterinarian's rule," according to which a veterinarian or a veterinary assistant employed to treat a dog " 'assume[s] the risk of being bitten during the course of treatment.' " (*Id*. at p. 1130.) *Priebe* concluded that the plaintiff, by virtue of her occupation as a kennel worker, assumed the risk of injury because it is the kennel's obligation to " 'determine the best way to handle the dog while at the kennel, and what protective measures, if any, should be taken to ensure employee safety.' " (*Id*. at p. 1129.) Since Wolf was not employed to care for Luigi, *Priebe* does not assist defendant.

Defendant's other authorities are also inapposite. The plaintiff in *Swigart, supra,* 13 Cal.App.5th 529 was injured during an endurance horseback riding event when the defendant's horse came too close to another horse, causing a collision that injured the plaintiff. (*Id*. at pp. 532, 534.) In holding the action barred by primary assumption of risk, the appellate court noted that horseback riding was inherently dangerous and that the evidence showed that riders in the event frequently "tailgated" other participants, indicating such behavior was part of the sport of endurance riding. (*Id*. at pp. 540–541.) No such evidence exists here. Nor is this a case like *Cann v. Stefanec* (2013) 217 Cal.App.4th 462, 465–466, 471, in which imposing liability for dropping a weight during a weight training session—as instructed by the coach—would alter the nature of the activity. *Staten v. Superior Court* (1996) 45 Cal.App.4th 1628 is similarly distinguishable. There, the court held that the risk of collisions between skaters was inherent in group figure skating. (*Id*. at p. 1634.) But walking a dog on a trail where owners must control their dogs falls into a different category from the "fluid[]" activity of figure skating with others in an enclosed ice rink. (*Ibid*.)

8

Most importantly, we are unpersuaded by Weber's contention that imposing liability here would alter the fundamental nature of off-leash hiking and chill vigorous participation by those engaged in the activity. Controlling one's dog is part of the "fundamental nature" of hiking on leash-optional trails in Tilden Park. Those who wish to enjoy having their dogs "run at large" and "play chase with other dogs" may do so, subject to Park District rules. (§§ 801.3 & 801.3(c)(4).) Those unable or unwilling to control their dogs may not let them loose in this area of the park.

Weber argues that the undisputed facts show Luigi was under his control for the purposes of section 8.301. Viewing the evidence in the light most favorable to Wolf, as we must (*Yanowitz*, *supra*, 36 Cal.4th at p. 1037), we disagree. The ordinance requires an owner to be aware of his or her dog's conduct for the animal to be considered under control (§ 801.3(b)), and it creates a presumption that a dog is not under control if the animal "physically harm[s] people directly or indirectly" or "touch[es] or jump[s] on other park users who have not invited or engaged in interaction with the dog" (§§ 801.3(c)(3) & (c)(5)). Weber was unaware that Luigi had run toward Wolf's party until the dog was 20 to 30 yards away and Wolf called out in fear, and Luigi did not initially respond to Weber's commands to sit and to return to him. There is evidence that Luigi collided with Wolf, causing her injuries, and no evidence to establish that she invited the interaction. On this record, there is at least a triable issue of fact whether Luigi was under Weber's control.

Weber also argues section 8.301 cannot serve as the basis for a cause of action for negligence per se. For this point, Weber cites *Moser v. Ratinoff* (2003) 105 Cal.App.4th 1211, which considered whether the doctrine of primary assumption of risk applied to injuries suffered during an organized

9

bicycle race on public roads. (*Id.* at pp. 1214–1215.) The specific question was whether the defendant's violation of provisions of the Vehicle Code constituted negligence per se, so as to preclude application of the primary assumption of risk doctrine. (*Id.* at p. 1223.) The court answered this question in the negative, on the ground the statutes did not evince any legislative intent to supersede the assumption of risk doctrine. (*Id.* at pp. 1225–1226, citing *Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1273–1274.) Weber argues that section 8.301 and its enabling legislation (Pub. Resources Code, § 5558, subd. (a)) similarly do not show an intent to abrogate the primary assumption of risk doctrine. But the decisions in *Moser* and *Distefano* are not dispositive here. In light of section 8.301 authorizing dogs to be off leash only under limited conditions, we have already concluded a person walking her dog in parkland regulated by section 8.301 does not, without more, assume the risk of injuries from a collision with another dog. Having found that the primary assumption of risk doctrine does not apply, we need not consider whether a cause of action for negligence per se somehow supersedes it.

## DISPOSITION

The judgment is reversed. Wolf shall recover her costs on appeal.

10

_____
TUCHER, J.

WE CONCUR:


_____
POLLAK, P. J.


_____
STREETER, J.

*Wolf v. Weber* (A157937)

11

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Hon. Steven K. Austin |
| Counsel for Appellant: | Bold, Polisner, Maddow, Nelson & Judson, Craig L. Judson, J. Kevin Moore, Sharon M. Nagle, and Kimberly LK. Moore |
| Counsel for Respondent: | Cholakian & Associates, Kevin K. Cholakian, Mika J. Frisk; Hayes, Scott, Bonino, Ellingson, Guslani, Simonson & Clause, LLP, Mark G. Bonino, and Emma B. Lloyd |