Filed 10/25/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KIMBERLY FOLTZ, | B277995 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC496666) |
| v. | |
| DARRYL WAYNE JOHNSON, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge. Affirmed.

Grassini, Wrinkle & Johnson, Roland Wrinkle and Marshall Shepardson for Plaintiff and Appellant.

Law Office of Cleidin Z. Atanous and Cleidin Z. Atanous for Defendant and Respondent.

Plaintiff and appellant Kimberly Foltz suffered a paralyzing spinal injury after being thrown from her dirt bike during a ride with her then fiancé, defendant and respondent Darryl Johnson. Foltz filed an action alleging negligence against Johnson. Johnson successfully moved for summary adjudication on the basis of primary assumption of risk. Foltz concedes that primary assumption of risk applies here, but argues there are triable issues of material fact whether Johnson's conduct increased the risks inherent in off–road dirt bike riding, or engaged in reckless conduct outside the range of activities generally involved in dirt bike riding. We affirm.

## BACKGROUND

The material facts surrounding the accident itself are largely undisputed: On September 4, 2011, Foltz and Johnson, were each riding their dirt bikes at the Dove Springs Off–Highway Vehicles Area (Dove Springs) in the Mojave Desert, when Foltz lost control of her dirt bike while riding down a steep sand dune. Her bike struck a rock, Foltz was thrown off and she sustained severe spinal injuries as a result.

*Foltz's Experience with Riding Off–Road Dirt–Biking*

Foltz and Johnson met in September 2010 and were engaged by September 2011. During their relationship, the couple frequently took their blended family to Gorman or Dove Springs, to camp and ride dirt bikes. Gorman's trails are well–established, hard dirt trails. The terrain and elevation at Dove Springs varies, ranging from easier hard–

2

packed trails, to flat but sandy areas, and more difficult areas with soft, deep sand. Johnson is an experienced dirt bike rider, and often has ridden and is familiar with the terrain at Dove Springs. Foltz is not an experienced rider. Before she met Johnson, Foltz operated a dirt bike three times during junior high. After meeting Johnson, the first time Foltz operated a dirt bike herself was during her first trip to Dove Springs. On that occasion, she rode Johnson's 250cc dirt bike for about 30 minutes, and stayed on trails close to camp to avoid deep sand. She fell several times during that ride because Johnson's bike was too big and too heavy for her, and because the area was sandy. Subsequently, Foltz switched to a smaller (185cc) bike, which she was better able to control. Foltz understood that there is a risk that people who ride dirt bikes in sand or off–road may have accidents and suffer serious injuries.[1]

Several months before September 2011, Foltz bought her own 185cc dirt bike. She rode her dirt bike during five weekend trips during the months before September 2011 on the dirt trails at Gorman. At Gorman, Foltz rode at an average speed of 30 miles per hour (mph). She took several falls during those rides, after dodging a bush or other object, but was not injured. Foltz was more comfortable riding at Gorman because, among other things, Dove Springs was for more

---

[1] During Foltz's first trip to Dove Springs, Johnson's son fell while riding and broke his arm.

3

advanced riders and she preferred Gorman's dirt trails to the sand at Dove Springs.

*The Accident at Dove Springs*

The family went camping at Dove Springs for Labor Day weekend 2011. On the afternoon of September 4, 2011, Johnson suggested that he and Foltz ride to a dry riverbed about an hour away. According to Foltz's deposition testimony, Foltz had told Johnson that she did not like riding in sand. He had seen her fall in the past when the sand got too deep. Johnson "guaranteed [her] that it was all road. That it was all flat and easy to ride on." Johnson had been on this ride about 15 times before. Foltz agreed to go and donned riding gear. They each rode their own dirt bikes. It was a sunny, clear day, without wind or dust. Foltz could see the road and dunes ahead.

Foltz and Johnson had an uneventful ride from camp to the riverbed, without falls or accidents. When they stopped at the riverbed, Johnson suggested they continue riding. Foltz agreed, after seeing that there was a trail heading in the direction Johnson wanted to travel. She rode behind Johnson on a riverbank trail.

Describing the events preceding her fall in her deposition, Foltz testified that after about two hours of riding on the riverbank trail, "[t]he trail started to end and I saw that we were headed towards a dune. And I told [Johnson] I'm not going up there. He said he guaranteed me there was a trail, just to follow him."

4

They "headed upwards" into the dune.  Asked whether there was "a trail or did it look like it was sand," she testified, "[t]here was a trail up until I got up into the dune.  And [I] realized that there was–the trail had ended. . . .  As I got up into [the dune], it ended."

When she first noticed the trail was ending, she was already slowing down because her bike was sinking in the sand.  She denied that after she realized the trail had ended, she continued to "ride for some distance," but then added:  "I was struggling just to keep my bike up.  I had to speed up to get through the sand.  Mr. Johnson kept riding in front of me.  At one point he turned around and I signaled to him that I'm turning around.  I'm like I'm finished.  I'm not doing this.  He's like you can do it.  You can ride through here.  And I said no.  I'm heading back to the campground."

Asked to give her "best estimate how far in terms of distance [she] traveled where there was this trail," she replied, "About 10 minutes."  Her testimony continued:  "As soon as I stopped–I realized the faster I went, I could get out of the sand.  And I was turning around, and I'd say I was going . . . 30 to 40.  I was speeding up because now I'm heading out of the dune and I'm going downhill."

She testified that "I got in the middle of [the dune].  It went higher and I stopped."  She was then asked whether it was "accurate to state that from the bottom of the dune to the middle of the dune was all sand, no trail."  She answered, "Yes," an apparent contradiction of her earlier testimony that the trail did not end until she got up into the dune.  Under further questioning, she added that in riding from the bottom to

the middle of the dune, she "was stuck and riding through it for about 10 minutes." Her bike was sinking the entire time she was in the dune, from the moment she began her ascent to the time she decided to turn around, and the only thing she could do to get out of the sand was to speed up. When she stopped, Johnson was ahead of her and encouraged her to continue. She refused, made a U-turn, and started to descend. Johnson started following her down the hill.

She was traversing the dune on a route different than the one she used to follow Johnson uphill. The terrain was very steep and sandy. Foltz was travelling at about 40 mph, was unable to control her bike and was afraid. In the dune, there were large grooves—a foot wide and six inches deep, with a hard surface, and deep sand and rocks along the side. The grooves appeared to have been carved out by downstream water from previous rains. Foltz's bike got stuck in a groove, and her back tire was "fishtailing" because of the sand. She was afraid because she could not stop or control her bike. Foltz hit and cleared (jumped over) a big rock at about 40 mph, and continued downhill. A few minutes later, her bike stopped when it hit a second rock, and Foltz was thrown over the handlebars. When she landed, her bike fell on her back, causing severe spinal injuries.

*Foltz Sues Johnson*

Foltz filed this personal injury action in December 2012, alleging negligence and four other causes of action. Johnson answered the

complaint, generally denied all allegations and asserted over 30 affirmative defenses.

In December 2014, Johnson filed the Motion for Summary Adjudication (Motion) at issue here. The Motion was based, in pertinent part, on Johnson's seventeenth affirmative defense asserting that Foltz assumed the risk of injury by engaging voluntarily in the inherently dangerous sport of off–road biking, and there was no material factual dispute that he owed her a duty of care.

The Motion was heard in early March 2015, and continued for supplemental briefing as to certain issues. Following a second hearing on April 24, 2015, the trial court found that undisputed facts established that Foltz's negligence claim was barred, as a matter of law, by the doctrine of primary assumption of the risk,[2] and granted summary adjudication as to that claim. The remaining claims were dismissed and judgment entered in favor of Johnson in September 2016. This appeal followed.

---

[2] The trial court's written order notes the disparity between the manner in which Foltz's negligence claim was pled and prosecuted. Notwithstanding the complaint's primarily "operational" allegations, the parties litigated the negligence claim as one turning on primary assumption of risk. A claim of ordinary negligence need only be pled in general terms. (*Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 514.)

## DISCUSSION

Foltz contends the trial court erred in finding her negligence claim barred by the doctrine of primary assumption of risk, because Johnson failed to satisfy his burden to demonstrate that he did not increase the risks beyond those inherently associated with off–road dirt biking, or engage in conduct recklessly outside the range of ordinary activity involved in that sport or recreational activity.

1.  *Summary Judgment and the Standard of Review*

"A motion for summary judgment 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) A defendant 'has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action . . . cannot be established . . . .' (*Id.* subd. (p)(2).) Upon such a showing, 'the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action . . . .' (*Ibid.*)" (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1153–1154 (*Nalwa*).) To satisfy this burden, the plaintiff cannot rely on the allegations of her pleadings, but "instead, must set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." (§ 437c, subd. (o)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

Here, Johnson asserted, and the trial court found, that Foltz's evidence failed to establish the duty element of the first cause of action for negligence. "'Duty, being a question of law, is particularly amenable to resolution by summary judgment.' [Citation.]" (*Nalwa, supra,* 55 Cal.4th at p. 1154.) "'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.'" (*Ibid.*) We apply the same standard of review to an order granting summary adjudication. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972; *City of Glendale v. Marcus Cable Associates, LLC* (2014) 231 Cal.App.4th 1359, 1376.)

2.      *Primary Assumption of the Risk*

In *Knight v. Jewett* (1992) 3 Cal.4th 296 (*Knight*), the California Supreme Court considered the duty of care that governs the liability of participants in certain sports and activities. The Court "recognized that careless conduct by coparticipants is an inherent risk in many sports, and that holding participants liable for resulting injuries would discourage vigorous competition. Accordingly, those involved in a sporting activity do not have a duty to reduce the risk of harm that is inherent in the sport itself." (*Shin v. Ahn* (2007) 42 Cal.4th 482, 486 (*Shin*); *Knight, supra*, 3 Cal.4th at pp. 318–319.) Rather, sports participants have a limited duty of care to coparticipants, which may be "breached only if they intentionally injure them or 'engage[ ] in conduct that is so reckless as to be totally outside the range of the ordinary

9

activity involved in the sport.' [Citation.]" (*Shin, supra*, 42 Cal.4th at p. 486; *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 995–996 (*Kahn*).) By choosing to participate, one assumes the particular risks inherent in a sport, and a defendant generally owes no duty to protect the plaintiff from those risks. (*Luna v. Vela* (2008) 169 Cal.App.4th 102, 108 (*Luna*).)

The duty to not increase an inherent risk does not turn on the plaintiff's subjective knowledge or appreciation of the specific risk of harm. "'[A] court need not ask what risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the sport and the defendant's role in or relationship to that sport in order to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm.' [Citation.]" (*Luna, supra,* 169 Cal.App.4th at p. 107.) Whether the doctrine of primary assumption of the risk bars recovery for an injury sustained turns on whether that injury resulted from an inherent risk of the activity and whether the defendant did anything to increase the risk or engaged in intentional or reckless conduct. (*Luna, supra,* 169 Cal.App.4th at p. 108; *Amezcua v. Los Angeles Harley-Davidson, Inc.* (2011) 200 Cal.App.4th 217, 232 (*Amezcua*).)

Our Supreme Court recently held, "the primary assumption of risk doctrine is not limited to activities classified as sports, but applies as well to other recreational activities 'involving an inherent risk of injury to voluntary participants . . . where the risk cannot be eliminated without altering the fundamental nature of the activity.' [Citation.]"

10

(*Nalwa, supra*, 55 Cal.4th at p. 1156.)  As the Court explained, "[t]he policy behind primary assumption of risk applies squarely to injuries from physical recreation, whether in sports or nonsport activities. Allowing voluntary participants in an active recreational pursuit to sue other participants . . . for failing to eliminate or mitigate the activity's inherent risks would threaten the activity's very existence and nature. . . .  But active *recreation*, because it involves physical activity and is not essential to daily life, is particularly vulnerable to the chilling effects of potential tort liability for ordinary negligence." (*Id.* at p. 1157.)

As an exception to the general duty of care, the doctrine of primary assumption of the risk may be a complete defense to a claim of negligence.  (*Luna, supra,* 169 Cal.App.4th at p. 108.)  Whether a defendant owes the plaintiff a duty of care is a question "of law to be decided by the court, not by a jury, and . . . generally is 'amenable to resolution by summary judgment.' [Citation.]" (*Kahn, supra*, 31 Cal.4th at p. 1004; *Amezcua, supra,* 200 Cal.App.4th at p. 227; *Record v. Reason* (1999) 73 Cal.App.4th 472, 479 (*Record*).)

3. *Primary Assumption of the Risk Bars the Negligence Claim*

Foltz concedes the doctrine of primary assumption of risk applies here, but insists the Motion was improperly granted because a material factual dispute remains whether Johnson increased the risk of harm beyond the risks inherent in off–road dirt biking, or engaged in reckless

11

conduct totally outside the range of ordinary activities involved in that sport.

### a. *Johnson's "Guarantee" of a Trail Did Not Increase the Inherent Risk of Injury from Off–Road Biking to a Coparticipant*

Foltz asserts that the trial court erred in applying the *Knight* rule because there is a material factual dispute whether the nature of the parties' relationship and disparity between their respective levels of riding expertise, and their experience riding at Dove Springs in particular, gave rise to a duty on Johnson's part not to increase the risks inherent in the sport by making a "deliberately false 'guarantee' of specific conditions," i.e., an easy ride on a flat, non–sandy trail. Specifically, Johnson was an experienced rider who had ridden many times at Dove Springs, and was familiar with its trails and varying terrain. Foltz was a novice who had learned to operate her own dirt bike just a few months before, had ridden at Dove Springs just once and never along this route, and specifically had shared with Johnson her fear of riding in sand. Foltz's argument fails.

The question of which risks are inherent in a recreational activity is fact-intensive but, on a sufficient record, may be resolved on summary judgment. (*Nalwa, supra,* 55 Cal.4th at p. 1158; *Shin, supra,* 42 Cal.4th at p. 500; *Luna, supra,* 169 Cal.App.4th at p. 112.) Judges deciding inherent risk questions under this doctrine "may consider not only their own or common experience with the recreational activity involved but may also consult case law, other published materials, and

documentary evidence introduced by the parties on a motion for summary judgment." (*Nalwa, supra*, 55 Cal.4th at p. 1158-1159 ["That deciding inherent risk may sometimes be difficult does not [mean] it is beyond the competence of California courts"].)

Here, undisputed evidence reflects that, at some point as Johnson and Foltz rode along the riverbed, Foltz noticed that the flat trail Johnson had promised and on which they had been riding, was ending and they were heading "upwards" approaching a "mountainful of sand." She unequivocally informed Johnson she would not go up that hill. Nevertheless, she agreed to do so after he guaranteed there was a trail and told her to follow him.

Foltz's deposition testimony was inconsistent on the point at which the trail ended. She first testified that "[t]here was a trail up until I got up into the dune. And [I] realized that there was–the trail had ended. . . . As I got up into [the dune], it ended." However, when later asked whether it was "accurate to state that from the bottom of the dune to the middle of the dune was all sand, no trail," she answered "Yes." Regardless of this inconsistency, however, her testimony was consistent on the point that before she decided to turn around she was riding through sand deep enough to cause her bike to get stuck, and she had to speed up to get the bike out of the sand.

After continuing to ride under those conditions (whether there was a trail part of the way into the dune or not), she ultimately decided to turn around and made a U-turn to head downhill. However, she lost (or began to lose) control of her bike and was travelling a different route

down than the route she took uphill.  The new terrain was steep and sandy, and large grooves–possibly created by prior rains–trapped her tires and made it impossible for her to stop or control her bike.  The grooves contained rocks and, after striking a large one at an excessive speed, Foltz's bike was stopped and she was thrown off.

The gist of Foltz's argument is that the primary assumption of the risk does not bar her claim as a matter of law because she was essentially duped[3] by Johnson's guarantee of a trail into riding on a hilly, sandy surface, even though Johnson knew she did not feel safe doing so and was afraid.  But, a plaintiff's subjective expectation does not define the limits of primary assumption of the risk.  "Primary assumption of risk focuses on the legal question of duty.  [Citation.]  It does not depend upon a plaintiff's implied consent to injury, nor is the plaintiff's subjective awareness or expectation relevant.  [Citations.]" (*Lilley v. Elk Grove Unified School Dist*. (1998) 68 Cal.App.4th 939, 943; *Luna, supra*, 169 Cal.App.4th at p. 107.)

Off–road riding involves the inherent risk that one will fall off or be thrown from one's bike.  (See *Distefano v. Forester* (2001) 85 Cal.App.4th 1249 (*Distefano*).)  Experience and common sense similarly instruct that the Mojave desert contains a great deal of sand, some of which forms dunes.  (*Nalwa, supra,* 55 Cal.App.4th at pp. 1158–1159.) Off–road desert riding, both on and off trails, involves the inherent risk of falls due, at least in part, to slipping or becoming mired in sand and

---

[3]    Any claim that Johnson made an "intentional misrepresentation" is barred; the complaint alleges only negligence.

which may result in being thrown from one's bike and suffering severe injury, even death.  The injuries Foltz suffered participating in this sport or recreational activity are clearly an inherent risk of the activity in which she chose to engage.

Johnson's promise of a continued or additional flat trail in an effort to urge Foltz to continue their afternoon ride was insufficient as a matter of law to increase the inherent risks of off–road dirt biking. (*Record, supra*, 73 Cal.App.4th at pp. 482-483.)  First, his promise or "guarantee" of a trail was accurate.  It is undisputed that the riders followed a trail along the river bed for up to three hours, most of which was on flat surface.  It is also undisputed that the riders followed a trail for some length of time before approaching the dune, and Foltz chose to go on that trail, even though it was heading uphill on a sand dune. Second, Johnson's "guarantee" did nothing to conceal the obvious nature of the terrain.  It is undisputed that Foltz observed the large "mountainous" dune as she approached (the day was clear and sunny, there was no wind or dust and no other dunes in sight), and informed Johnson she would not ascend.  Notwithstanding that unequivocal pronouncement, and despite her fear of riding in sand, Foltz agreed to follow Johnson up the sandy hill after he promised a trail.  She was aware of her limited experience and abilities and appreciated the potentially severe risks inherent in dirt bike riding–particularly the risk that she could fall off in the sand, just as she had before at that very park.  Having chosen to ascend the hill, Foltz implicitly understood she would have to descend at some point.  It is undisputed that Foltz

15

made a unilateral decision to turn back and travelled down on a different path than the one she took up. That route, down steep, sandy and rocky terrain, was indisputably difficult to traverse and, at 40 mph Foltz could not control her bike. When she was thrown off, she sustained the very sort of injury one risks in this sport.

Foltz leans heavily on the vast disparity between Johnson's riding expertise and her own. Again, her inexperience and expectations are not relevant to primary assumption of risk. (*Knight, supra*, 3 Cal.4th at p. 316.) "[A] defendant's liability must be based on 'the nature of the sport itself' rather than 'the particular plaintiff's subjective knowledge and expectations . . . .' [Citation.] If not, 'there would be drastic disparities in the manner in which the law would treat defendants who engaged in precisely the same conduct, based on the often unknown, subjective expectations of the particular plaintiff who happened to be injured by the defendant's conduct.' . . . ." (*Record, supra*, 73 Cal.App.4th at p. 482.) If "application of the assumption of risk doctrine in a sports setting turned on the particular plaintiff's subjective knowledge and awareness, summary judgment rarely would be available in such cases, . . . , as . . . it frequently will be easy to raise factual questions with regard to a *particular* plaintiff's *subjective* expectations as to the *existence* and *magnitude* of the risks the plaintiff voluntarily chose to encounter. By contrast, the question of the existence and scope of a defendant's duty of care is a *legal* question which depends on the nature of the sport or activity in question and on

16

the parties' general relationship to the activity, and is an issue to be decided by the court, rather than the jury." (*Id.* at p. 483.)

      b.      *There are No Triable Factual Issues Whether Johnson Engaged in Reckless Conduct Totally Outside the Range of Activity Involved in Off–Road Dirt Biking*

Relying on *Kahn, supra,* 31 Cal.4th 990, Foltz maintains the trial court erred in granting the Motion by failing to consider the existence of material factual questions whether Johnson engaged in reckless conduct outside the range of activities generally involved in dirt bike riding. No evidence supports the assertion that Johnson engaged in reckless conduct.

A coparticipant in a sport breaches a duty of care "only if the participant . . . engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Knight, supra,* 3 Cal.4th at p. 320.) Reckless conduct involves a conscious choice of a course of action, with knowledge that a serious danger to others is involved (*Mammoth Mountain Ski Area v. Graham* (2006) 135 Cal.App.4th 1367, 1373), or the deliberate disregard of a high degree of probability an injury will occur. (*Towns v. Davidson* (2007) 147 Cal.App.4th 461, 470.) In a primary assumption of risk case, summary judgment is appropriate if there is no evidence the defendant recklessly injured the plaintiff. (*Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1066.)

In *Kahn,* the plaintiff was a 14–year–old member of a school swim team. She was a competent swimmer but lacked competitive swimming

experience and was intensely afraid of injuring her head by diving in shallow water. (*Kahn, supra,* 31 Cal.4th at p. 998.) She shared that fear with her coach, but received no training in shallow–water race diving. (*Ibid.*) Instead, he assured Kahn she would not have to dive at meets. (*Ibid.*) However, minutes before a meet, the coach told the plaintiff she would have to dive. She panicked and begged him to change the rotation so she would not have to dive in the shallow pool. He refused and told her that, if she did not dive, she could not compete nor remain on the team. (*Ibid.*) With the help of some teammates, Kahn tried a few practice dives; she broke her neck on the third one. (*Ibid.*) She sued based on negligent supervision and training.

The Supreme Court reiterated the principle that urging an inexperienced participant in a sport to engage in a more difficult maneuver was not tantamount to increasing the risks associated with the sports activity. (*Kahn, supra,* 31 Cal.4th at p. 1008 ["pushing an athlete to compete, excel, or move to the next level of competence ordinarily does not form a basis for liability on the part of athletic instructors and coaches"]; *id.* at p. 1011 ["In order to support a cause of action in cases in which it is alleged that a sports instructor has required a student to perform beyond the student's capacity or without providing adequate instruction, it must be alleged and proved that the instructor acted with intent to cause a student's injury or that the instructor acted recklessly in the sense that the instructor's conduct was 'totally outside the range of the ordinary activity' (*Knight, supra,* 3 Cal.4th at p. 318) involved in teaching or coaching the sport."].)

18

However, the Court concluded the case could not be resolved on summary judgment as there was conflicting evidence whether the coach had provided any instruction or, if so, whether that instruction followed recommended training sequence, and whether plaintiff was threatened. (*Id*. at pp. 1012–1013.) If a jury found the coach directed plaintiff to perform a shallow racing dive without providing proper instruction in contravention of her stated fear, after creating a false sense of security by promising she need not dive at meets, and then breached that promise during the last minute heat of a competition under threat of punishment for refusal to comply, that could constitute sufficient recklessness by the coach to establish an exception to primary assumption of risk. (*Id*. at p. 1013.)

The circumstances here differ markedly from those in *Kahn*. Foltz was a relatively inexperienced off–road rider. But she was not a child, was not under any pressure or engaged in a competitive event, and Johnson was not her coach or supervisor, and was not in a position of authority over her. Although Johnson was aware that Foltz was afraid of and disliked riding on sand, there is no evidence he insisted she ride up the dune or that he threatened her with any consequence if she refused to do so. Rather, Johnson encouraged a coparticipant in a recreational activity to traverse the dune based on the promise of a trail. Mere encouragement does not establish an exception to primary assumption of risk. (See *Kahn, supra*, 31 Cal.4th at pp. 1008-1010.)

Moreover, on this record, there can be no material factual dispute that Johnson created a false sense of security. In one part of her

19

deposition testimony, Foltz stated that from the moment she began her ascent up the dune it was obvious there was no trail. Contradicting that point in another part of her testimony, she stated that there was a trail, but it ended after she got up into the dune. Regardless, she consistently testified that while traversing the dune, she was riding through sand deep enough for her bike to get stuck, and had to speed up to continue. Hence, notwithstanding Johnson's promise of a flat, nonsandy trail, Foltz clearly observed the desert topography herself, and implicitly concedes the route she took at Johnson's urging was neither flat (it headed up a "mountainous" hill) nor free of sand, yet chose to proceed. The trial court correctly concluded that *Kahn* is inapposite here.

A "recklessness" argument similar to Foltz's was rejected in *Record, supra*, 73 Cal.App.4th 472. There, the plaintiff who was being pulled in an innertube by defendant (a boat operator), told the defendant about his preexisting injury, and asked the defendant to go slowly. The plaintiff sustained a spinal injury after falling out of the innertube while being towed. (*Id.* at p. 475.) The trial court granted defendant's motion for summary judgment based on primary assumption of risk. (*Ibid.*) On appeal, plaintiff argued that he raised a triable factual issue of fact because, among other things, he told the defendant to go slowly and take it easy because of his preexisting injury, and the defendant was reckless because he made a sharp turn and was driving the boat at 30 mph when plaintiff was injured. (*Id.* at pp. 483–485.) The court rejected these arguments.

20

A party cannot change the inherent nature and risk of a sport by making a unilateral request for other participants to play less vigorously. (*Record, supra*, 73 Cal.App.4th at p. 482, citing *Knight, supra*, 3 Cal.4th at p. 300 [it was immaterial that the plaintiff asked the defendant when playing touch football ""not to play so rough"" and to ""be careful""].) *Record* explained that "tube riders engage in the activity of tubing in order to experience the thrill of whipping across the water at speeds [that] challenge their ability to stay on the tube. Both appellant and respondent testified via deposition that falling out of the inner tube is a 'common occurrence' and that '[e]verybody falls off the innertube.' Neither appellant's preexisting injuries nor his admonition to respondent to '[k]ick back' and 'take it easy' can be used to define the nature of the activity or the parties' relationship to it. Nor can these factors be used to redefine the ordinary range of activity and the concomitant risks inherent in the sport and thus enlarge the potential liability of coparticipants." (*Record, supra*, 73 Cal.App.4th at pp. 483–484.) The court in *Record* also discounted the contention that the primary assumption of risk doctrine did not apply because the boat driver had control over the tube rider's speed and direction. (*Record, supra*, 73 Cal.App.4th at p. 485.) The court noted that the boat driver was a coparticipant in tubing because each chose to engage in a mutually enjoyable activity. (*Id.* at pp. 485–486.)

Similarly, nothing in this record creates a triable factual issue whether Johnson engaged in conduct so reckless as to be totally outside the range of ordinary activity involved in the sport of off–road dirt

21

biking.  (*Shin, supra,* 42 Cal.4th at p. 486; *Kahn, supra,* 31 Cal.4th at pp. 995–996.)  Under the circumstances, Johnson's promise of a trail did not constitute reckless conduct that increased the risks above those inherent in riding.  The "very nature of the sport of off–roading is 'driving activity that would not be countenanced on streets and highways, such as[] unsafe speeds, stirring up dust, [and] becoming airborne on hills and cresting dunes,' and '[i]t is an activity which for all intents and purposes has no rules.'"  (*Distefano, supra,* 85 Cal.App.4th at p. 1262.)  It is a "sport that may be readily characterized by the phrase '[t]hrills, chills, and spills,'" in which "'there is an inherent risk of injury, serious injury or even death . . . .'"  (*Ibid.*)

Other than a single allegation in the complaint untethered to any facts, Foltz has not alleged or argued that Johnson was reckless.  Rather, she maintains summary adjudication was improper because her testimony is in "direct conflict" with Johnson's, making this "a classic 'liar's . . . contest.'  Their competing stories are literally off by hours and miles."  But Foltz fails to specify any material respect in which her version of the facts departs from Johnson's story by "hours and miles," and does not identify a significant dispute as to the relevant facts in connection with any allegedly reckless behavior.  The parties disagree whether Foltz rode behind or in front of Johnson at some point, about how long they were away from camp and about whether they rode on one or more trails before the accident.  These disagreements are, at best, too speculative to create a triable issue as to increased recklessness on Johnson's part.  Speculative possibilities are not

22

substantial evidence.  (See *Citizen Action To Serve All Students v. Thornley* (1990) 222 Cal.App.3d 748, 756.)

For all the foregoing reasons, Johnson's motion for summary adjudication was properly granted because Foltz cannot establish the essential element of duty of her claim of negligence.

## DISPOSITION

The judgment is affirmed.  Johnson shall recover his costs on appeal.

**CERTIFIED FOR PUBLICATION**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

COLLINS, J.

23